oral argument, 15 minutes per side. Ms. Salinas, the supervising attorney for the appellate. Good morning and may it please the court. I'm Melissa Salinas and I'm from the University of Michigan Law School. I have the honor of introducing Veronica Portillo-Heap. Thank you to the court for allowing our students to practice. Thank you. Good morning and may it please the court. My name is Veronica Portillo-Heap on behalf of Mr. Johnson. I'd like to reserve three minutes for rebuttal. Fine. Thank you. This is a case about process and why process matters. We can see from the transcripts that the district court was very frustrated with Mr. Johnson and that this affected the framework in which the trial proceeded. From start to finish, the district court lacked attention to process. But it's precisely when the defendant appears difficult or frustrating to the court that process is most needed. I'd like to focus on two process errors. First, regarding Mr. Johnson's Sixth Amendment right to self-representation and second, his Sixth Amendment rights to compulsory process and to present a defense. First, as this court made clear in United States v. McBride, when a defendant invokes his right to self-representation, the district court must conduct a FARETA inquiry that is substantially similar to that in the bench book. The district court failed to do so here. There was no formal colloquy. He did not name the charges that Mr. Johnson was facing. He did not explain that sentences for the 13 counts could be run consecutively. He did not explain that the rules of evidence, rules of criminal procedure, would not be relaxed for Mr. Johnson's benefit. He did not strongly admonish Mr. Johnson not to proceed pro se. In fact, he affirmatively misstated Mr. Johnson's sentencing exposure, saying, quote, this is not 50 to 70 years. In fact, Mr. Johnson was sentenced to 72 years. Mr. Johnson could not have knowingly waived his right to an attorney if he did not know that he was facing life in prison. By saying that this is not 50 to 70 years, that wasn't a misstatement, was it? Because it ended up being 72 years. That's the one point. And then, again, on the process, even though you have focused on what you describe as the failure to adhere to process, where an individual is refusing counsel, are you suggesting that the court has the right to represent themselves? And I understand Veretta, but I'm just asking, are you saying that there is some constitutional right to self-representation? So on the first point, I think the court saying this is not 50 to 70 years implied this is less than 50 years. So I think it was problematic to suggest that. Because Mr. Johnson was saying, is this true? Could I be facing 50 to 70 years? And he said, no, this is not 50 to 70 years. So I think that was the concern there. Secondly, I think in Veretta, the court does explain that the waiver has to be knowing, voluntary, and intelligent. And I think that where the district court finds that the defendant, where that waiver is not adequate, where it isn't knowingly made, or that the defendant is not competent, whatever it may be to waive, that the court may effectively impose a lawyer because the waiver of the right is so critical. So if the district judge had gone through all of the items in the bench book, could there have been a knowing, voluntary, and intelligent waiver here? I think it's possible if he had gone through the bench book. But I think the critical problem here was that this was just really shoved to the side. So many of the issues in the bench book were not addressed. And I think most critically, those ending parts. No strong admonishment and no express finding that the waiver was knowing, voluntary, and intelligent. So there was an express waiver in the order that was entered the next day. How does that impact that argument? Right. Well, the bench book does say that the waiver should be expressed on the record at the end of the hearing if the court finds that waiver is appropriate. So assume that even that minor of a problem, of not making it explicit at the end but doing it in an order, happened. What should the remedy be? Should the remedy be to vacate the conviction and order a new trial? Or should the remedy be to send the case back to the district judge for a full FARETA hearing now? Your Honor, we think it should be to vacate the conviction and send back for a new trial. Given that the right to an attorney is so central to the fairness of the framework in which the trial proceeds. As the Supreme Court has stated in, for example, United States v. Gonzalez Lopez, the right to self-representation where there are related errors. This is a structural defect that assessment of harmlessness or prejudice is inappropriate. So I think where the right has been violated, the case needs to be sent back for a new trial. And as this Court stated in Ayers v. Hall, where the defendant, simply because the defendant seems to be educated or perhaps understand the stakes of the case, does not absolve the court from obtaining an adequate waiver. There, even an experienced criminal defense attorney was entitled to a proper FARETA inquiry. And here, the district court basically, a presumed waiver that is not consistent with the court's protective function that it should be adopting in these FARETA inquiries. Saying, quote, you're aware of the charges, you're aware of the potential sentencing consequences, but again, no real explanation of what this meant. And this was a complicated case. Well, so a problem here is the behavior of your client. That your client was, shall we say, very obstructive and disruptive at many times. So what, hypothetically, if your client refuses the third appointed counsel, if the case went back, what would you do? What would you do? What should a district judge do then if that happens? Your Honor, I'm not sure exactly what would be most appropriate, but I think it is clear that the waiver has to be knowing, voluntary, intelligent. And otherwise, the defendant has a right to an attorney. So perhaps in that situation, the court in its protective function should find that the defendant should have an attorney. Is it your position that your client wanted to represent himself and it's a mistake because the court didn't go through all the FARETA requirements? Or is it your position that he should have had an attorney and not let him represent himself at all? Is there a position that you would like to make? Or are you just saying it needs to go back and let the judge recite through all these criteria? Your Honor, we think it should go back so that the judge can recite the criteria. I don't know if a proper inquiry is given exactly what would be the right conclusion. I think that's really for the district court to consider and weigh. And the critical issue is that there was no critical thought given to whether the waiver was knowing. This may be an inappropriate question, in which case you can feel free to tell me that and not answer. Did your client accede to you representing him here? I'd like to point out so that this was not waiver by misconduct, as the government raises. So first, the district court stated in its order afterwards that Johnson had invoked his right to self-representation post-FARETA. So it's clear that this is how the district court understood the waiver. But second, this court has clearly distinguished between cases where a FARETA inquiry is required, and on the other hand, cases where the defendant has waived his right to an attorney by misconduct. In those cases, the defendant did not want to proceed pro se. The defendant is warned, and ultimately the court orders that the defendant needs to proceed pro se, that it will not hire a fourth, fifth, or sixth lawyer. But Mr. Johnson wanted to proceed pro se. He asked to proceed pro se. The district court never over Mr. Johnson's objection refused to appoint a new lawyer. And third, the waiver needs to be expressed. It needs to be on the record. Often... I want to go back and ask, you know, we're looking at this case, and we're looking at well, is the district court entitled to look at and evaluate the knowing and intelligent waiver process, considering the length of the court's interaction with the defendant, or do you judge that at a particular point in time? Because, you know, as you have acknowledged, the defendant insisted on representing himself, and there have been other lawyers appointed which he rejected. Can the court take that into account when it's filing this order the next day saying, you know, basically that the defendant's actions are knowing and voluntary and entering that on the record? I'm just focusing on, are you saying that it needs to be made at a particular point in time, or can the court, the trial court, before whom the defendant appears, make the determination based on the accumulated evidence over the course of the case? Sure. Yes, Your Honor, I think the court can consider cumulative evidence. So, for example, I don't think it was an error for the court not to ask Mr. Johnson if he had a legal education because he knew from earlier points in the case that Mr. Johnson didn't have a legal education. I think he didn't need to ask questions that he clearly knew the answer to. And I think the Faretta Inquiry is flexible, right? It really just has to be substantially similar. The points, the relevant considerations need to be elicited, but some just don't make sense given the case. And so here, the problem is that, you know, so many of these are about rights at trial, and they simply were not addressed. With the court's permission, I'd like to touch briefly on the second issue. So, after Mr. Johnson was appointed standby counsel, and so was still pro se, he really found himself in an impossible situation in a Catch-22. The district court would not look at his pro se letters because they wanted them to come through standby counsel. But on the other hand, standby counsel was also not acting on Johnson's behalf or even indicating that the district court's ruling that Mr. Johnson was, quote, not going to have witnesses, violated his compulsory process right and his right to present an offense. The Constitution... Who in particular are you claiming now Johnson would have called? So we don't have this information in the record, partly because when Johnson said, I want to present witnesses raised versus Kentucky raising this issue, I see I'm out of time, if I can answer. So, yeah, we don't clearly have the information in the record. We know from an earlier pre-trial hearing that Johnson mentioned he wanted to call people that knew both of them, knew them in the course of their relationship to speak to her reputation or character for violence because he was trying to present a self-defense claim as to some of the counts. And as this court stated in Fleming v. Metrish, where a defendant is completely barred from presenting any witnesses to corroborate his contention that the victim is known to be violent in a self-defense case, that is a strong compulsory process claim. But did the district judge bar him from presenting any witnesses or did the district judge say that there wouldn't be subpoenas issued because he hadn't sought to get subpoenas? Your Honor, he stated that he was not going to have witnesses. Johnson stated again and again on the later days of trial, I have evidence I would like to present. I would like to call witnesses. And the judge did not waver from this position that Johnson was not going to have witnesses. And so I think a reasonable attorney would interpret that statement, a reasonable defendant, as a ruling that he was not going to have witnesses. He never retracted that ruling. He never rescinded that ruling. And so we think he really was, had ruled that he was not going to be able to present. We know what these witnesses would have testified to had they been called or is it just harmless error? So, Your Honor, we don't exactly know. The problem being that the district court did not allow Johnson to try to make a proffer or explain what witnesses did he want to present, why, what could they testify to, how is it relevant to the case. Because the district court did not allow Johnson to make this presentation and said rested its ruling on a factual finding that Johnson had not presented witnesses. While at the same time refusing to look at any contrary evidence that Johnson was trying to present. In this situation, I think it's unfair to find the error harmless where we are just lacking critical information to assess the effect of the error because of the district court's really abbreviated determination on this issue. Thank you. May it please the court. My name is Erin Shaw and I represent the United States. Defense counsel has focused largely on the Ferretta issue on what the district judge missed in conducting the inquiry. And I'd like to focus instead on what the district judge covered during the inquiry. Defense counsel also indicated that she believes that a formal inquiry is required and I don't think that's the case. The law is clear that formal adherence to the bench book is not required and instead the standard that we look at is whether the bench book was substantially complied with. And this court has consistently reviewed a district judge's Ferretta inquiry and appeal by focusing on whether the district judge addressed the relevant considerations behind the model inquiry. And those include the familiarity with the law, the gravity of the charges and the dangers of self-representation, and whether the defendant's decision to waive counsel is voluntary. And these come from the Bankston case. On the first issue of whether the defendant was familiar with the law, that was one of the first things that the district judge focused on when Mr. Johnson indicated that he wanted to represent himself. He said, don't you think it's a little bit out there to think that without a legal education you're a better lawyer than either Mr. Wolfe or Mr. Kelzer? And that's when Mr. Johnson went into his discussion about all the things he thought he was qualified to do. And he said he was familiar with the federal rules of evidence. He said he was familiar with the rules of procedure. He said, trust me, I've studied, I'm college educated. And he provided information that even though the court knew that he was not someone who had attended law school, that he felt that he had studied. And then what the judge did next is very important. He cautioned him that you're potentially engaging in an area where you don't have the experience or expertise to evaluate all of the potential implications. Even notwithstanding that admonishment from the court, he indicated that he did want to proceed pro se and represent himself. On the next issue, of gravity of the charges and dangers of self-representation, the court did not go through each of the charges one by one, but they had been presented to the defendant previously at arraignment. And the prosecutor went through the charges at the previous hearing where Mr. Kelzer moved to withdraw in March, which was just about a month prior. There really isn't much information in the record to suggest that Mr. Johnson didn't understand the charges. Most of the pretrial evidentiary motions had to do with whether certain types of witnesses would be able to testify about most of the issues relating to counts one, two, and three, which dealt with unlawful imprisonment. What about the extensiveness of the sentence that was possible? My understanding is that there was this interchange between Johnson and the court where the court said, no, you're not going to get 50 to 70 years. Well, it's true. The judge did provide, I'd say, misinformation of the penalties when he said it's not 50 to 70 years. In fact, a life sentence was possible, and in fact, Johnson gets a sentence of 72 years by the very same judge. That is true. I believe, though, that defense counsel mischaracterized the colloquy. He didn't say, wait, what am I looking at? And he said, well, it's not going to be 50 to 70. He was saying that he didn't trust Mr. Wolfe. He didn't trust the information that Mr. Wolfe had provided to him, and I agree with you that that's an issue of concern, but I don't think that it's fatal to a finding of waiver. Where was there any indication on this Feretta hearing that Johnson understood that he could be sentenced essentially to life in prison? In the hearing itself, it's not, but I think Judge Donald had asked a question about whether you can consider the whole record, and that is something that this court has done, and that's the King v. Bobby case, but later in the case, when Mr. Johnson is speaking at trial, he indicates that he knows he's looking at a life sentence. So I think, Judge Moore, you're right. It didn't happen in that hearing, but if we look at what happened in between the hearing and trial, there's no question that Mr. Johnson was aware that he could have been facing a life sentence, and I think it's important that he didn't then say, wait a minute, I didn't know that. I want to go back. I do want a lawyer now. He's stuck with his decision to go pro se and to represent himself, even after he did know what the penalties were. In addition, the court did ask him the question, are you aware of the potential sentencing consequences? And he indicated that he was. Maybe he wasn't, but he did give the court a... That was just a general question. It wasn't specific. He didn't then ask him to say, what do you think they are? But he did ask him, are you aware? And Mr. Johnson had indicated that he was. And of course, we did say in our brief that he had been previously advised that he could have been sentenced up to life at his arraignment, and he had two arraignments in this case because there was a superseding indictment. The dangers of self-representation were made aware to Mr. Johnson. I disagree that the court downplayed the dangers. The admonishment that the court gave said that self-representation is constitutionally protected, but it's not advisable, and it's for that reason that it's important that I be sure that you understand that. That is a strong admonishment in my view, that he wanted to make sure Mr. Johnson understood that there were dangers to self-representation. When confronted with his choice about choosing to go alone after the judge had said, I think it's a little bit out there, Mr. Johnson's response was, I'm sure these men have a lot more experience at trial. It would be a David and Goliath, but I'm willing to take that opportunity, and I'm willing to put my life on the line. That also provides pretty compelling evidence that Mr. Johnson was aware of the dangers and wanted to go forward anyway. As to voluntariness, there are six places on the record during the hearing where he says he wants to represent himself. After the court goes through and says, are you aware of the charges, the sentencing consequences, and the fact that you don't have the necessary experience, Mr. Johnson says, I'm all in. I want to represent myself. Finally, as Judge Moore noted, there was a written express finding the same day, I believe it came in that afternoon. It's true it didn't happen in the hearing. I don't know that it's required to happen in the hearing under any of the case law. The bench book might say that, but that's not what the law says. The express finding, though, looking at that order, it was essentially one paragraph, and it was a conclusory sentence, correct? Yes. The court does make the finding that it was knowing, voluntary, and intelligent. In one sentence, yes. That's right. Unless there are any additional questions on the Ferretta inquiry, I'd like to move on to the next issue. I'd like to respond to the defense argument that Judge Ludington made a blanket exclusion of witnesses during trial. I think we're looking at the wrong place in the record to find out what happened at the district level. When there was time for the district court to hear evidence from the defense, they called, first, Mr. Johnson, and then second, after he had completed his testimony, the court asked Mr. Crawford, who was then representing Mr. Johnson, if there were any additional witnesses. Mr. Crawford said, no, defense has no additional witnesses. We'll be resting at this time. To say that there was a blanket exclusion of witnesses, and he wasn't given the opportunity to call any, is just simply not the case. He was given the opportunity to call witnesses, and he chose not to call any. Your opponent is pointing out earlier statements of the district judge, probably when the defendant was representing himself, that the court was not going to look at the defendant's Crawford statement as to witnesses that he wanted to be subpoenaed. I'm not sure that that's quite what happened. This came up because during Bardere, Mr. Johnson provided a list of names of people that he said would be his witnesses, and that gave Mr. Crawford some concern, because Mr. Crawford said, this is the first time I'm hearing of these witnesses. It became an issue, to your point, Judge Moore, about are these people that are going to be coming? Then the defendant disputed with Crawford in open court. The defendant said, no, I gave it to you. I gave it to my other two lawyers, and I tried to send it to the district court Defendant Johnson is making a statement repeatedly that he has given his witness list to everybody that he should be giving it to. I don't know that it's so much giving a witness list and that the court punished him for not meeting a case management order. It's that Mr. Crawford wasn't aware of who these people were to get them subpoenaed. I'm not sure that it's clear from the record that this is the same stuff from previously in May, and that there was the same exchange of materials in court that day, because the record doesn't suggest that except that he says it. Are you suggesting, though, that no weight or no consideration be given to this statement that Mr. Johnson makes, that I send the list to my previous two attorneys, I send it to the court clerk, and yes, I gave it to you, that the court could just disregard that and not make any inquiry? I understand what counsel said, you know, I didn't get it, or you didn't give it to me, and so there was a dispute there. What do we do with that? What should the trial court have done with that? Well, I think the issue there is not just did I provide them with the list, but did I follow up and make sure subpoenas were caught, and that's something that Mr. Johnson makes very clear, is I'm not sure if they were subpoenaed or not. So I think part of compulsory process is that the defendant has to take the steps to make sure that these subpoenas were obtained, and he didn't do that. And you don't need, sorry, I know I'm just going to say, because Mr. Johnson was incarcerated, right, and I mean, there are limited things he could do. He was in communication with his standby counsel during this time, certainly, because he was able to provide him with his handwritten motions and things that Mr. Crawford got onto the record for him, but... If witnesses come voluntarily. Exactly, and that was, I was going to my next point, is let's look at who these witnesses are. They're his family members. He wanted to call the victim, the case agent, and then I think a handful of five or four... He wanted his mother and his cousin and several other people, so he was under the impression that he couldn't call any of these witnesses, because he hadn't provided a witness list. Is that not correct? That might be his impression, but I think we also need to look at the language of what the court said, not necessarily what Mr. Johnson said. And Judge Ludington's explanation about why Mr. Johnson wasn't going to have witnesses is important. He says, you are not going to have witnesses because you've not furnished the attorneys, and then he stops and he gets interrupted by Mr. Johnson. He never completes the sentence. He didn't say, you can't have witnesses or I'm forbidding you from having witnesses or you're barred. He's explaining, you're not going to because, and we probably shouldn't use brackets to fill in what he was going to say there, but the discussion at that point was about securing their presence, not that there was some sort of punishment for not providing a list. There was no request for a continuance to get additional witnesses, and if these witnesses had come voluntarily, I think they would have been able to be called, and that's certainly why the court asked, any additional witnesses, sir? I don't think the court thought that there was a blanket exclusion of witnesses because he asked the very question at the appropriate time, do you have anyone else to call? What do we do with the statement that's in the record that Johnson says that he asked, that he sent Crawford, his standby counsel, he sent Crawford 75 letters and Crawford said that he wasn't reading them all? I'm not sure that's what he said. I think he said that he, he said we did a pretty good job with the subpoenas and anything that was something that I needed to subpoena, he says I think I did a pretty good job of that because that had been a concern with the other attorneys is that Mr. Johnson thought that they weren't moving on his request for subpoenas and things, so I'm not sure that that's really... Crawford did file subpoenas on behalf of Johnson? I believe, I don't know that he filed subpoenas in the sense that he would have done, not for witnesses, but for evidence, I believe that he did. He wanted additional evidence from Facebook and I think Mr. Johnson said we've done a pretty good job of that. Mr. Johnson was concerned that the information he received from the government from Facebook was incomplete, so he wanted to get his own information. Pertaining to witnesses? No, with respect to witnesses, no, because as Mr. Crawford said, this is the first I'm hearing of them. The only... Johnson says I've sent 75 letters to you, Crawford, and you haven't responded to them. Well, even if they were in these letters, they communicated and talked about it, and he says this is the first time I'm hearing of witnesses besides his mother, so I think the fact that his mother wasn't called is important because that's someone that Mr. Crawford didn't know about and was under subpoena because she was on the government's witness list, so it... Did she appear at the trial, the mother, and was she available for him to call without any problem? I don't know if she was in the courtroom, but I know she was under government subpoena. She was on the witness list, right? She was on the government's witness list, and she had been subpoenaed, and that's something that Mr. Crawford makes clear is she will be here, and we can basically use the government subpoena if we need to, and I think it's really important that there was clearly no blanket exclusion because he did question the victim, which was one of his witnesses, the FBI agent, which was a second victim, excuse me, a second witness, and then third, he had the opportunity to call his mother, and they elected not to call her, so this notion that he was barred from having process because of the submission of this list to either Mr. Crawford or in this package to the court, the issue of his mother really, I think, stands out as an example where he made a decision not to call her for whatever reason. I know your yellow light is on, but there's a concern that I have about sentencing that I wanted to ask, and I'll just put it forward as a statement that you can then try to rebut. The statement would be that the sentencing transcript does not reflect the consideration of the variety of factors that a district judge should consider, and specifically that it does not do anything about the 3553A factors, it does not explain why the sentences are consecutive, and so the proposition is that this is a fatally flawed sentencing. How would you respond? I agree that what the district judge said at sentencing was brief, but I think it was sufficient under the facts of the case, because the issues at sentencing were pretty straightforward. We had an agreed guideline range, we had no defense objections, we had no mitigation evidence, and we had no motion for a downward departure or variance. The court stated, I observed something important about you to Mr. Johnson, and that was that I do not discern any sense of moral guardrails concerning your own behavior, none. And I agree with you that the actual words 3553A didn't appear in that sentencing transcript. Nor do any of the factors specifically appear. That's true, but when we look at the statement, I observed something important about moral guardrails, I think implicit in that statement, that deals with a lot of the 3553A factors, like history and characteristics of the defendant, nature and circumstances of the offense, protection of the public, and specific deterrence. What the court observed during the trial was Johnson's own explosive behavior, heard all about his explosive behavior towards the victim. The judge knew about explosive behavior against the attorneys. The judge also says that he reviewed the guideline assessment outlined in the pre-sentence report, and the guideline assessment is one of the 3553A factors, so I think that was another factor that was considered here. What about the use of consecutive sentences for all of the different counts? He didn't specifically explain that either, but as we said in our brief, the only way to even get to the guidelines would have been to run some of the sentences consecutively. Because the highest possible penalty for any of them, I think I made a mistake in my brief, I think I said it was 15 and it was actually 20, but they would have had to stack them to even get to the guidelines. And that was a sentence that the defense had asked for, Mr. Crawford wrote a sentencing 30 years. So how do we know within the rubric of this guardrail comment, not discerning any moral guardrails, how do we know that part of that wasn't a reflection of the judge's frustration with the management of Mr. Johnson through this process? How can we be sure that it was these factors that were implicit in that and not something else driving that, since there was no articulation? And I understand that we don't have to go, a judge doesn't have to go through and do some kind of ritualistic incantation of the 3553A factors, but in this case, with just that conclusive restatement, and a defendant who clearly has been frustrating and difficult during the process, how do we know that that didn't in some way guide that sentence rather than some of the things that you point to the 3553A contours? Well I think in this context, maybe Judge Levington was frustrated with this defendant, but I think there are a lot of times when he tries to redirect him, and he tries to get his input, and he's trying to help him get out of his own way, so to speak, and that's actually the first observation that he makes. This is the second observation, there's no moral guardrails, but he says something to the effect that you seem to do a lot of things that are not in your best interest. Thank you Judge Moore, I'm finding it right at the same time you are, but he says what's in your best interest is what is not. You behave in ways that didn't assist the presentation of your case. So I think whether there were frustrations or not, this is not a case where the district judge was punishing him for that, it's more that he's trying to help him to get there, and he says what are you looking for? He's going on and on about calling the victim a federal informant, and he's trying to focus him over and over, like no, focus on my question. In trial, don't engage with the victim, and don't engage with the prosecutor, engage with me, and in sentencing he says I want your input, that's what I want, and it's Mr. Johnson who doesn't really provide any, so all they have is what Mr. Crawford provided in the sentencing memo, which also did discuss the 38553A factors, and specifically discussed protection of the public and specific deterrence. And I don't know that this is particularly relevant to the issues before us, but under the counts of conviction, are you saying that there was no way to get in the range of the 30 years that the sentencing guidelines and the requirements, which you say did provide for stacking, would not have ever gotten the defendant anywhere close to that 30 years? It would have been in the upper 70s, or in the high 60s and 70s, and that the stacking occurred to the extent it had to? Well, I'm not quite saying that. I'm saying you couldn't even get to a guideline sentence at all without some stacking, because the highest statutory maximum penalty was 20 years on the witness tampering. So you'd have to start at 20, and then there's that 10-year gap to even get there, and then that would only account for a few of the different counts. And he didn't even do a 20-year sentence on the witness tampering. It was only each one was four. Mr. Johnson argued that that was double-counted with respect to the witness tampering, didn't he? He did. Those were, were they grouped together, or were they double-counted, as he said? No, some were grouped and some weren't. Each event, first, each event of witness tampering was a separate, independent event. There were eight different counts. So three of the different events, counts 5, 6, and 7, were put into groups 1, 2, and 3. And then there were five remaining counts, and the way that, I think it's 5C1.2D, says to group when you have obstruction is that you need to slot, you know, when you've got a space for only one, you slot one in and the rest need to go separately. So here we had counts 5, 6, and 7, and it took the spot, so to speak, in the group. And so there wasn't anywhere to put 9 through 13, and that's why the court treated them separately. And I think that's what Application Note 5 says to do, and that's what, that's the way that that happened. And did the PSR specifically advocate for consecutive sentences for these different counts? I'm not sure that the PSR advocated for a particular sentence in our district. I don't think that they do that. No, but advocated for consecutive as opposed to concurrent sentences. I'm just curious, you know, at one point you said that the defense acceded to the PSR. And so if the PSR said we recommend that these sentences on the different counts be consecutive, then that would be an important concession that the defense raised. I'm not sure if it said that. I don't, I'm standing here right now, I don't remember if the probation officer made a recommendation or not. Sometimes they do, and that's in a separate part, and I don't know that I saw that. And in sentencing, was Crawford the actual attorney, or was he a standby counsel at that point? Well, at that point it's unclear, because going up to sentencing, he was told during trial, you're going to be trial for the continuation of the case. And so he assumed that role then. At the early part of the hearing, Mr. Johnson made his appearance, and so did Mr. Crawford. And the court says, to clarify I think, that Mr. Crawford is going to be standby counsel. But up to that point he had served in a function of being defense counsel. He filed a sentencing memorandum that says I'm defense counsel on behalf of Mr. Johnson, and Mr. Johnson adopts it. So that seems bizarre. It is bizarre. Looking at that sentencing transcript, and you're clearly correct that the court says you are standby counsel Crawford. It's very bizarre, because then when you look at the rest of the transcript, how it plays out, he plays out like he's a typical everyday defense lawyer. And it's almost like if you ripped that first page out, you'd have no way to know that Mr. Crawford was acting as standby counsel, because it's the usual formula where he asks the defendant, he asks the district lawyer, do you have any objections, then he asks the defendant, then he asks the defense lawyer to allocute, then he asks the defendant. I mean, it looks just like a typical sentencing where the defendant is represented. I think perhaps maybe just the judge got confused about the routine that they had established and said that, but the nuts and bolts of how the sentencing went don't suggest that at all but for that statement on the first line or two of the transcript. We've taken you over. Thank you very much. Thank you very much, and I just would like to finish by, of course, asking you to affirm the judgment. Thank you. So first on the Feretta issue, misstating the sentencing consequences, standing alone should be enough. And further, what the defendant knew, what Mr. Johnson knew at the time of the trial, we just can't read that into what he knew at the time of the hearing. That hearing was May 2019, and the trial was October 2019. So any comments that come later, it's just inappropriate to read them in. We needed that information on the record, and it's not there. As to the compulsory process issue and whether the list was there, this Court doesn't need to resolve whether the list was there. We just don't have that evidence in the record because the district court refused to look. And it was arbitrary to not say, okay, show me in these letters where is your list. Refusing to do that was arbitrary, particularly because he made clear that his decision that Johnson was not going have witnesses was based on a factual finding. Specifically, you have not furnished the attorneys with your witness list. So to refuse so much as look was arbitrary, it didn't serve any legitimate purpose. Further... Do we know who all these witnesses are exactly? Your Honor, we don't. That's the mother. Your Honor, we don't, and that is because Mr. Johnson was not allowed to explain it. The Court just says end of discussion. It's a very brief discussion and then just ends the hearing. And so, yeah, we don't know because of the Court's, you know, abbreviated treatment of this issue. If it got sent back and told the Court to have a hearing on it, could you bring these witnesses in? And if they didn't have anything to say, is that harmless error? You just say, well, they should have been able to bring them in. Your Honor, it's not harmless error because we just, we don't know. The Court needed to specifically consider what are these witnesses going to say? How is this relevant? Is this evidence admissible? But he just decided, he said, I don't believe you. I don't believe you submit the list. Refuses to look at documents Johnson is trying to pass up. So I think he needed to the error must have been harmless. We don't have that information. We don't know beyond a reasonable doubt that that error was harmless. Well, you would send it back down to the District Court. The District Court could say, tell us who these people are and let's have them here in court. And if they say, I don't know anything, isn't that harmless? No, Your Honor, and that wouldn't be an appropriate remedy. The problem is that at his trial, he wasn't permitted to present witnesses. If this information was admissible, right, the jury should have been able to consider it. Johnson was presenting a self-defense claim and he was in a situation where he was not allowed to admit a single exhibit or a single witness. He had only his own testimony and compare that to the government introduced various witnesses to bolster the complaining witnesses' credibility, domestic violence experts. Couldn't the defense lawyer Crawford, when he gets appointed in the middle of the trial, couldn't Crawford have said, I want to make a proffer out of the hearing of the jury that my client has these four witnesses that we want to present and that we believe we have been prevented from presenting and then have a proper statement as to what they would say. Couldn't that have been done? I mean, we don't know, right, because we don't have it on the record. No, but as a matter of law, thinking about strategy as a trial lawyer, if in fact Crawford knew that there were these critical people, whether it's the mother or the cousin or some other people, if Crawford knew who they were and Crawford is now representing the defendant, couldn't Crawford have said when the district judge says any other witnesses after Johnson testifies, couldn't Crawford have said, yeah, we do have some other witnesses and we understand that you've said they can't be presented, but here is my proffer out of the hearing of the jury as to what these witnesses, who they would be and what they would say. I think standby counsel, yes, could have asked the court to reconsider its ruling that Johnson was not going to have witnesses present the proffer. That should have happened, but I think just reading in some kind of rescission of the earlier order, because Johnson, again, day in and day out was saying, I want to present my witnesses, I want to present my witnesses. Then finally he's removed from the courtroom and suddenly then the have any witnesses, but Johnson was clear, he wanted witnesses. So I think we can't just read in some kind of, yeah, the court overruling its earlier ruling that he was not going to have witnesses. We don't have that kind of express decision on the record. Your time is up. Any further questions? Okay. Thank you. Ms. Portillo-Heap, I understand that you're appointed pursuant to the Criminal Justice Act and we thank you for your service to your client. Moreover, we understand that you are a law student at the University of Michigan Law School and we think that you have done an outstanding job in representing your client and are a model for lawyers in this court. So thank you very much for your work. Thank you so much. We thank the Assistant U.S. Attorney as well for your work, but it's particularly worth noting when a law student does an excellent job. So thank you very